# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS ANTONIO GARCIA and CHRISTINA ELIZABETH PALMER GERACI,<br><br>Plaintiffs,<br><br>vs.<br><br>PROGRESSIVE CHOICE INSURANCE COMPANY,<br><br>Defendant. | CASE NO. 11cv466-BEN<br><br>**ORDER DETERMINING PARTIES' JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE, DENYING IN PART AND GRANTING IN PART PLAINTIFF'S MOTION TO QUASH AND GRANTING PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER**<br><br>[Doc. No. 11.] |

## INTRODUCTION

This case arises out of the denial of an insurance claim. The original Plaintiffs, Jesus Garcia and Christina Geraci, filed a Complaint stating their 2006 Jeep Cherokee, insured by Progressive Choice Insurance Company ("Progressive"), was stolen in 2008 and found completely burned hundreds of miles away from its original location. (Complaint ("Compl.") at ¶ 6.) The Complaint alleged that Progressive subsequently denied Plaintiffs' claim for coverage in violation of the insurance contract. (*Id*. at 3-6.)

After Progressive issued numerous subpoenas seeking the personal and financial records of

Mr. Garcia, the parties filed a joint motion to dismiss Mr. Garcia as a Plaintiff. [Doc. No. 7.] The motion was granted on June 10, 2011. [Doc. No. 8.] On July 12, 2011, the parties filed a Joint Motion for Determination of Discovery Dispute centering on the question of whether, in light of Mr. Garcia's departure from the case, Progressive's subpoenas seek irrelevant and privileged material not reasonably calculated to lead to the discovery of admissible evidence. [Doc. No. 11.] The parties' joint motion is currently before the Court.

## FACTUAL BACKGROUND

On November 29, 2007, Christina Geraci added Jesus Garcia to her existing Progressive insurance policy as a second named insured with equal rights under the policy. [Deft.'s Exhs. O & P.] At that time Mr. Garcia and Ms. Geraci, who are now married, were engaged.[1] [*Id*. at Exh. O.] The couple jointly decided to purchase a new car and together decided on the purchase of a Jeep Cherokee. [Deft.'s Exh. U at 92-3.] They did not need two cars as Ms. Geraci's license was suspended and only Mr. Garcia would be driving the Jeep. [*Id*. at 86-7.] On May 19, 2008, Ms. Geraci individually signed a purchase agreement for a 2006 Jeep Grand Cherokee, using a down payment from Mr. Garcia, and added the vehicle to her insurance policy. [Deft.'s Exh. Q.] Mr. Garcia was not a party to the purchase agreement because his previous car had been repossessed and he would not qualify for the financing. [Deft.'s Exh. U at 99.]

In pertinent part, the insurance policy contained the following clauses:

> FRAUD OR MISREPRESENTATION
>
> . . .We may deny coverage for an accident or loss if you or a person seeking coverage has concealed or misrepresented any material fact or circumstance or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.
>
> JOINT AND INDIVIDUAL INTERESTS
>
> If there is more than one named insured on this policy, any named insured may cancel or change this policy. The action of one named insured will be binding on all persons provided coverage under this policy.

[Def.'s Exh. S at 75 & 78.]

---

[1] The couple married sometime in late August 2008.

1    On August 18, 2008, Plaintiffs visited friends at Yogi's Bar in Encinitas. (Compl. at ¶ 6.)
2 They left the Jeep Cherokee at Yogi's at the end of the evening because they consumed too much
3 alcohol. [*Id.*] They went home with friends. [*Id.*] When Plaintiffs returned the next day, the car was
4 no longer outside the bar. [*Id.*] Plaintiffs discovered the CHP had found the car miles away,
5 completely burned. [*Id.*] Plaintiffs filed a claim for the stolen vehicle with Progressive shortly after
6 the incident. [*Id.*]

7    Progressive investigated the claim by taking recorded statements from Plaintiffs as well as
8 examinations under oath. (Compl. at ¶ 7.) Among other things, Mr. Garcia told Progressive that he
9 and Ms. Geraci were debt free and had paid off their credit cards. [Deft.'s Exh. T at 82.] Mr. Garcia's
10 credit report contradicted this representation of his financial standing. [Deft.'s Exhs. Y & Z.] On
11 July 27, 2009, Progressive denied Plaintiffs' claim quoting the Fraud and Misrepresentation provision
12 in the policy and stating there were inconsistencies between Plaintiffs' statements and the evidence
13 obtained. (Compl. at ¶ 9.)

14    On February 2, 2011, Plaintiffs filed a Complaint in Superior Court for breach of contract and
15 breach of duty of good faith and fair dealing. [Doc. No. 1-1.] The case was removed to this Court on
16 March 7, 2011. [Doc. No. 1.] After discovery opened and on June 1, 2011, Progressive issued the
17 following business records subpoenas regarding Mr. Garcia:

18    (a) to four credit issuers--J.P. Morgan Chase Bank, Capital One Bank, Citibank, and Premier
19 Bankcard [deft.'s exhs. C-H];

20    (b) to a lender and the collection agency to which the unpaid loan was assigned for
21 collection–AmeriCredit Financial Services and Vengroff, Williams [*id*. at G-H];

22    (c) to two lenders of unsecured credit–North County Credit Union and Cashcall [*id*. at I-J];

23    (d) to a former employer–Yogi's, LLC [*id*. at K]; and

24    (e) to a bank where Mr. Garcia held a business checking account and a joint checking account
25 with Ms. Geraci–Bank of America (*id.* at L).

26    On June 8, 2011, the parties filed a joint motion to dismiss Mr. Garcia as a Plaintiff in this
27 action. [Doc. No. 7.] The District Court granted the motion on June 10, 2011. [Doc. No. 8.] Ms.
28 Geraci, the remaining Plaintiff, thereafter objected to the subpoenas directed at retrieving Mr.

1  Garcia's financial records. [Scott Decl. ¶ 2.] On June 21, 2011 and June 24, 2011, counsel for the
2  parties unsuccessfully attempted to resolve the dispute and have filed the joint motion seeking
3  determination by the Court of their dispute over the above referenced subpoenas. Plaintiff seeks a
4  protective order or, in the alternative, an order quashing the subpoenas. Progressive asserts it has a
5  right to the discovery but is willing to stipulate to an appropriate confidentiality agreement.

## DISCUSSION

1. The Parties' Positions

Plaintiff claims the subpoenas seek privileged information that "unduly violate[] [Mr. Garcia's] personal and financial privacy rights." (Plt.'s Mem. P. & A. at 5.) Plaintiff further asserts that such information is irrelevant because not only is Mr. Garcia no longer a plaintiff in this cause of action but he was never a party to the purchase contract for the vehicle, and has no insurable interest in the vehicle. (*Id*.) Plaintiff requests the Court issue an order quashing the subpoenas or, in the alternative, issue a protective order.

Progressive argues the documents are not privileged and are relevant to its defense that Mr. Garcia misrepresented material facts during the investigation of the claim which, under the terms of the insurance contract, entitled Progressive to deny the claim. (Deft.'s Mem. P. & A. at 3.)

2. Should the subpoenas be quashed?

(a) *The documents are not privileged*

Federal Rule of Civil Procedure 45 sets forth the duties and obligations of parties issuing subpoenas and non-parties responding to subpoenas. "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. Proc. 45(c)(1). "On timely motion, the issuing court must quash or modify a subpoena that: . . . (iii) requires disclosure of privileged or other protected matter." Rule 45(c)(3)(A). In a pure diversity case, such as this case, State law governs interpretation of substantive matters, including privilege. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-80 (1938); *see also Platypus Wear, Inc. v. K.D. Co., Inc.*, 905 F.Supp 808, 811 (S.D. Cal., 1995) (state law governs law of privilege in diversity case).

Plaintiff cites *Sav-On Drug Stores v. Superior Court*, 15 Cal.3d 1 (1975) for the proposition

that financial information in general is privileged. However, *Sav-On* does not support such an assertion; it specifically focuses on the Revenue and Taxation Code, finding that the language in the statute shows a clear legislative intent that *tax returns* be treated as privileged in order to encourage full and truthful declarations. *Sav-On,* 15 Cal.3d at 6. The court in *Sav-On* specifically stated "[o]ur decision is a narrow one, limited to the record before us." *Id*. at 8. More on point, in *Valley Bank of Nevada v. Superior Court*, 15 Cal.3d 652, the court found "the general rule appears to be that there exists no common law privilege with respect to bank customer information." *Valley Bank*, 15 Cal.3d at 656. Rather, "[c]onfidential financial affairs as well as [] the details of one's personal life" is protected by the constitutional right to privacy. *Id*. The "right of privacy is not absolute; it may be abridged to accommodate a compelling public interest." *Moskowitz v. Superior Court*, 137 Cal.App.3d 313, 316 (1982) (citations omitted). One such interest is uncovering the truth in legal proceedings by allowing broad discovery. *Id.* When the right of privacy and the public interest conflict, the court must balance the interests for a fair resolution of the lawsuit. *Id.*

Thus, the documents sought are not privileged but Mr. Garcia does have a right of privacy in them that must be accounted for in the conduct of discovery. This is further addressed below.

(b)     *Relevance*

Rule 26(b)(1)[2] states that discovery may be obtained "regarding any nonprivileged matter that is relevant to any party's claim or defense. . .." In the comments to Rule 26(b)(1), the Advisory Committee attempts to further clarify the rule:

> The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action. . . . A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action. . . . For example, other incidents of the same type . . . could be properly discoverable if likely to yield or lead to the discovery of admissible information.
> 78 Cal.App.4th847
> ***
> [T]he court . . . has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signal to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings.

Rule 26(b)(1), Advisory Committee Notes, 2000 Amendments.

---

[2] All references to "Rules" are to the Federal Rules of Civil Procedure.

1    Here, Progressive has shown that the financial documents sought are relevant to its defense
2 of the case. In its Answer, Progressive states "Plaintiffs' claims are barred because, before and during
3 the pendency of the insurance policy alleged, and in connection with the loss alleged, plaintiffs
4 misrepresented and /or concealed material facts." (Answer at ¶ 23.)  Under the insurance policy
5 between Progressive and Plaintiff, if one insured misrepresents a material fact pursuant to a claim, the
6 misrepresentation binds other insureds and such misrepresentation may be cause for denial of a claim
7 (exact texts cited on page 2).

8    Whether Mr. Garcia was under financial hardship at the time of the destruction of the car and
9 submission of the claim is a material fact for purposes of determining fraud. *See Abdelhamid v. Fire*
10 *Ins. Exchange,* 182 Cal.App.4th 990, 1001 (2010) (where insurer has reason to suspect arson, inquiry
11 into financial condition of insured is material). Thus, evidence of Mr. Garcia's misrepresentation of
12 the status of his financial health would be relevant in determining Progressive's right under the
13 insurance contract to deny the claim. *Id.*

14    One of Plaintiff's bases for lack of relevance is that Mr. Garcia was not a party to the purchase
15 contract and had no "insurable interest." An insurable interest has been defined as existing whenever
16 "the insured has a direct pecuniary interest in the preservation of the property, and [] will suffer a
17 pecuniary loss as an immediate and proximate result of its destruction." *Shade Foods v. Innovative*
18 *Products Sales & Marketing, Inc.*, 78 Cal.App.4th 847, 875 (2000) (quotations and citations omitted).
19 Mr. Garcia made the $1400 down payment for the Jeep. [Deft.'s Exh. U at 98.] When asked about
20 his expenses, he listed the car and insurance payments along with rent and utilities. [Deft.'s Exh. T
21 at 82.] Ms. Geraci did not have an income at the time and was a full-time student. [Deft.'s Exh U at
22 88-91.] Mr. Garcia was the exclusive driver of the Jeep [deft.'s exh. U at 87 & 92], he needed the
23 vehicle for work, and would give Ms. Geraci rides to and from school. [*Id.* at 99.] Clearly, the loss
24 of the Jeep would result in a pecuniary loss to Mr. Garcia. Thus, Mr. Garcia's interest would fall
25 under the definition of an insurable interest.

26    Additionally, when Ms. Geraci added Mr. Garcia to the insurance policy, she specifically
27 requested that he have equal rights under the policy. The transcript of her conversation with the
28 insurance agent reflects her expectation in this regard:

> Q. . . .Now, for Jesus, do you want him to be listed as a second named insured so he has the same rights on the policy that you do?
> A. Correct. I just want to make it we're both equal. . .it's both of our policy now.

[Deft.'s Exh. O at 50.] In *Shade Foods*, the court identified the "familiar principles of insurance policy interpretation" as the following :

> [W]e generally resolve ambiguities in favor of coverage. [Citations.] Similarly, we generally interpret the coverage clauses of insurance policies broadly, protecting the objectively reasonable expectations of the insured.

*Shade Foods,* 78 Cal.App.4th at 873. Plaintiff and Mr. Garcia's expectation was that Mr. Garcia would be covered fully under the policy. Therefore, it follows that all the provisions of the contract would apply to Mr. Garcia and Ms. Geraci equally, including the clause that bound Ms. Geraci to Mr. Garcia's actions during the submission and investigation of the claim. *See* [Def.'s Exh. S at 75.] ("[t]he action of one named insured will be binding on all persons provided coverage under this policy." ).

While the Court recognizes the relevance of the financial information sought by Progressive as relevant to its defense, the relevance of Mr. Garcia's employment records, sought under Subpoena 9, is not so clear. Progressive does not claim Mr. Garcia misrepresented any facts regarding his previous employment at Yogi's bar. Although Progressive claims the records "may shed light on the extent of his knowledge of the bar's operations, the surrounding parking areas, and security efforts used by the bar and nearby businesses related to vehicle thefts," it has not articulated with sufficient specificity how this information relates to its claims or defenses. [Doc. No. 11 (Jt. Mot.) at 25.]

The Court concludes Subpoena 9 relating to Mr. Garcia's work records is irrelevant to Progressive's defense and should be quashed. The financial records are relevant, however, because it appears Mr. Garcia's presentation of his financial standing contradicted his credit report, and if so would be a misrepresentation that goes directly to Progressive's defense. The fact that Mr. Garcia is no longer a party to this cause of action does not affect the relevance of the financial documents in this instance.

///

### 3. Protective Order

This is a remedy that is available to "any person" who is able to establish good cause for issuance of the protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . .." Rule 26(c). In determining good cause a court "must balance the requesting party's need for information against the injury that might result if uncontrolled disclosure is compelled." Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to the Courts*, 105 Harv.L.Rev. 427, 432-33 (1991). A constitutional interest in privacy should be recognized in this balancing process. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34-36 (1984). Certainly, the Court recognizes that Mr. Garcia has an interest in the privacy of his bank statements. However, Progressive needs the information for its defense of the allegations in the Complaint.

Plaintiff seeks a protective order and Progressive has stated it is willing to stipulate to a confidentiality agreement. Therefore, the Court considers the best course to take at this juncture is for the parties to draw up a mutually agreeable protective order regarding the financial documents and submit it to the Court for approval.

### **CONCLUSION**

The Court **HEREBY ORDERS:**

(1) Subpoena number 9 is quashed;

(2) With regard to all other subpoenas and the information sought therein, the parties shall submit a joint motion for entry of a protective order and a proposed order no later than **September 1, 2011.**

**IT IS SO ORDERED**.

DATED: August 24, 2011

*/s/ Nita L. Stormes*
Hon. Nita L. Stormes
U.S. Magistrate Judge
United States District Court