# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS ANTONIO GARCIA and CHRISTINA ELIZABETH PALMER Ms. Geraci,<br><br>Plaintiffs,<br><br>vs.<br><br>PROGRESSIVE CHOICE INSURANCE COMPANY,<br><br>Defendant. | CASE NO. 11cv466-BEN<br><br>**ORDER:**<br><br>**(1) DETERMINING PARTIES' JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE;**<br><br>**(2) DENYING PARTIES' MOTION FOR PROTECTIVE ORDER WITHOUT PREJUDICE**<br><br>[Doc. Nos. 16 & 18.] |

## **INTRODUCTION**

This case arises out of the denial of an insurance claim. The original Plaintiffs, Jesus Garcia and Christina Geraci, filed a Complaint stating their 2006 Jeep Cherokee, insured by Progressive Choice Insurance Company ("Progressive"), was stolen in 2008 and found completely burned hundreds of miles away from its original location. (Complaint ("Compl.") at ¶ 6.) The Complaint alleged that Progressive subsequently denied Plaintiffs' claim for coverage in violation of the insurance contract. (*Id.* at 3-6.)

Mr. Garcia was dismissed as a Plaintiff on June 10, 2011. [Doc. No. 8.] On August 22, 2011, the parties filed a Joint Motion for Determination of Discovery Dispute regarding whether Progressive is entitled to discovery sought from Ms. Geraci through several requests for production and interrogatories. [Doc. No. 16.] The parties' joint motion is currently before the Court.

## FACTUAL BACKGROUND

On May 19, 2008, Ms. Geraci individually signed a purchase agreement for a 2006 Jeep Grand Cherokee, using a down payment from Mr. Garcia, and added the vehicle to her insurance policy. [Doc. No. 17 at 2.][1] Mr. Garcia was not a party to the purchase agreement because his previous car had been repossessed and he would not qualify for the financing. [*Id.*]

In pertinent part, the insurance policy contained the following clauses:

> FRAUD OR MISREPRESENTATION
>
> . . .We may deny coverage for an accident or loss if you or a person seeking coverage has concealed or misrepresented any material fact or circumstance or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.
>
> JOINT AND INDIVIDUAL INTERESTS
>
> If there is more than one named insured on this policy, any named insured may cancel or change this policy. The action of one named insured will be binding on all persons provided coverage under this policy.

[*Id.*]

On August 18, 2008, Plaintiffs visited friends at Yogi's Bar in Encinitas. (Compl. at ¶ 6.) They left the Jeep Cherokee at Yogi's at the end of the evening because they consumed too much alcohol. [*Id.*] They went home with friends. [*Id.*] When Plaintiffs returned the next day, the car was no longer outside the bar. [*Id.*] Plaintiffs discovered the CHP had found the car miles away, completely burned. [*Id.*] Plaintiffs filed a claim for the stolen vehicle with Progressive shortly after the incident. [*Id.*]

Progressive investigated the claim by taking recorded statements from Plaintiffs as well as

---

[1] The current motion rests on the same facts as previously outlined by the Court in its recent Order Determining Discovery Dispute with regard to subpoenas served on Mr. Garcia, docketed in the record at number 17.

1  examinations under oath. (Compl. at ¶ 7.) Among other things, Mr. Garcia told Progressive that he
2  and Ms. Geraci were debt free and had paid off their credit cards. [Doc. No. 17 at 3.] Mr. Garcia's
3  credit report contradicted this representation of his financial standing. [*Id.*] Ms. Geraci stated she
4  did not have an income at the time and was a full-time student. [*Id.* at 6.]

5  On July 27, 2009, Progressive denied Plaintiffs' claim quoting the Fraud and Misrepresentation
6  provision in the policy and stating there were inconsistencies between Plaintiffs' statements and the
7  evidence obtained. (Compl. at ¶ 9.) On February 2, 2011, Plaintiffs filed a Complaint in Superior
8  Court for breach of contract and breach of duty of good faith and fair dealing. [Doc. No. 1-1.] The
9  case was removed to this Court on March 7, 2011. [Doc. No. 1.] Discovery began on approximately
10 May 11, 2011. [Doc. No. 16 at 12.]

11 Progressive has sent Ms. Geraci requests for production of documents for the period between
12 January 1, 2008, to the present, that reflect the following: (a) bank account activity; (b) income,
13 including tax returns; (c) monthly expenses; and (d) financial liabilities. Progressive also sent the
14 following interrogatories: (a) description of each act that Ms. Geraci claims entitles her to punitive
15 damages; (b) the date each act occurred; (c) identification of each person with knowledge of facts
16 regarding the acts; (d) identification of any and all documents supporting occurrence of the acts; and
17 (e) details of every credit card Ms. Geraci has maintained since May 1, 2009, every loan since May
18 1, 2009, and every financial institution where Ms. Geraci kept a deposit account since January 1, 2008.

19 Ms. Geraci has objected to Progressive's requests and the parties have filed a Joint Motion for
20 Determination of Discovery Dispute. [Doc. No. 16.] The parties have also submitted a proposed
21 Protective Order. [Doc. No. 18.] The motion and Proposed Order are now before the Court.

22 **DISCUSSION**

23 1.   The Parties' Positions

24 Ms. Geraci claims the requested discovery is overbroad, violates her right to privacy, violates
25 her taxpayer privilege, is irrelevant, and altogether burdensome. Ms. Geraci further argues certain of
26 the interrogatories call for expert opinion, are conclusive and premature.

27 Progressive argues the information requested is relevant to its defenses that Mr. Garcia and/or
28 Ms. Geraci misrepresented material facts concerning their financial condition during the investigation

of the claim and that there is no basis for Ms. Geraci's emotional distress allegation.

  2. <u>Relevance</u>

Rule 26(b)(1)[2] states that discovery may be obtained "regarding any nonprivileged matter that is relevant to any party's claim or defense . . .." Here, the financial documents Progressive seeks are relevant to the claims and defenses in this case.

Ms. Geraci's Complaint seeks damages that cover incidental and out-of-pocket expenses stemming from breach of contract and also compensatory damages for emotional distress stemming from the bad faith claim. (Compl. at ¶¶ 13-17.) To prove her emotional distress claim Ms. Geraci must show it occurred as a proximate result of the financial condition in which she was left due to Progressive's failure to honor her insurance claim. *See Continental Ins. Co. v. Superior Court*, 37 Cal.App.4th 69, 86 (1995) (implied covenant of good faith is actionable if it causes financial loss to the insured; emotional distress is compensable as an aggravation of the financial damages).

Additionally, in its Answer, Progressive states "Plaintiffs' claims are barred because, before and during the pendency of the insurance policy alleged, and in connection with the loss alleged, plaintiffs misrepresented and/or concealed material facts." (Answer at ¶ 23.)

All of the evidence requested by Progressive pertains to Ms. Geraci's financial condition before, during and after the insurance claim process and is relevant to both her claim for damages and Progressive's misrepresentation defense under the Fraud and Misrepresentation Clause of the insurance contract. *See Abdelhamid v. Fire Ins. Exchange,* 182 Cal.App.4th 990, 1001 (2010) (where insurer has reason to suspect arson, inquiry into financial condition of insured is material).

  3. <u>Privilege and Privacy</u>

    A. Tax Returns.

Ms. Geraci argues her financial information is privileged and/or private information not subject to Progressive's discovery requests. In a pure diversity case, such as this case, state law governs interpretation of substantive matters, including privilege. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-80 (1938); *see also Platypus Wear, Inc. v. K.D. Co., Inc*., 905 F.Supp 808, 811 (S.D. Cal., 1995) (state law governs law of privilege in diversity case).

---

[2] All references to "Rules" are to the Federal Rules of Civil Procedure.

In *Sav-On Drug Stores v. Superior Court*, 15 Cal.3d 1 (1975), the court found that the language of the Revenue and Taxation Code reflected a clear legislative intent that tax returns be treated as privileged in order to encourage full and truthful declarations. *Sav-On,* 15 Cal.3d at 6. In *Brown v. Superior Court*, 71 Cal.App.3d 141 (1977), the California Court of Appeal extended the privilege to W-2 forms because they "are required to be attached to a taxpayer's state and federal income tax returns [and] constitute an integral part of the return." *Brown*, 71 Cal.App.3d at 143-44. However, the tax return privilege is not absolute. *Weingarten v. Superior Court*, 102 Cal.App.4th 268, 274 (2002). "The privilege will not be upheld when (1) the circumstances indicate an intentional waiver of the privilege; (2) the gravamen of the lawsuit is inconsistent with the privilege; or (3) a public policy greater than that of the confidentiality of tax returns is involved." *Id.* at 274. "A trial court has broad discretion in determining the applicability of a statutory privilege." *Id.* Here, the Court finds that two exceptions apply.

Ms. Geraci's emotional distress claim rests on her ability to show financial losses proximately caused by Progressive's denial of insurance coverage. Specifically, she claims that she could not obtain student loans due to her damaged credit and that she consequently defaulted on her outstanding student loans. To defend this claim, Progressive seeks the tax returns to verify the accuracy of the representations Ms. Geraci made regarding her financial condition, what effect the alleged mishandling of the insurance claim had on her financial security, and whether any factors unrelated to the insurance claim contributed to the alleged emotional distress. The court finds that due to the relevance of the tax returns to Ms. Geraci's emotional distress claim and Progressive's defense of it, "the gravamen of the lawsuit is inconsistent with application of the privilege because the documents sought may verify or contradict [Ms. Geraci's] damages claim." *Barrous v. BP P.L.C.*, 2011 WL 1431826, *4 (N.D. Cal. 2011) (compelling production of tax returns where plaintiffs claimed that but for defendant's conduct they could have received financing to develop their property); *see Small v. Travelers Property Cas. Co. of Am.*, 2010 WL 2423649, *1 (S.D. Cal. 2010) (compelling production of tax returns where Plaintiff claimed loss of income and profits and defendant insurer denied coverage).

Further, while narrow, the public policy exception applies when warranted by a legislatively

declared public policy. *Small*, 2010 WL at *4 (citing *Weingarten*, 102 Cal.App.4th 268). While there is also a public policy interest in maintaining a discovery process that ensures the judicial system's ability to uncover the truth, that policy, by itself, is not sufficient to overcome the privilege. *Deployment Medicine Consultants v. Pipes*, 2010 WL 4853814, *2 (S.D. Cal. 2010) (citing *Fortunato v. Superior Court*, 114 Cal.App.4th 475, 483 (2003); *see Weingarten*, 102 Cal.App.4th at 276 (finding public policy interests in preventing and punishing both fraud and discovery abuses).

The California Legislature, in its "Legislative Findings and Declarations," states:

> (b) Insurance fraud is a particular problem for automobile policyholders; fraudulent activities account for 15 to 20 percent of all auto insurance payments. Automobile insurance fraud is the biggest and fastest growing segment of insurance fraud and contributes substantially to the high cost of automobile insurance with particular significance in urban areas.
> (c) Prevention of automobile insurance fraud will significantly reduce the incidence of severity and automobile insurance claim payments and will therefore produce a commensurate reduction in automobile insurance premiums.

Cal. Ins. Code § 1871. "Taken as a whole, section 1871 et seq., is specifically tailored toward preventing and punishing the making of fraudulent claims to insurance companies." *State of California ex rel. Nee v. Unumprovident Corp.*, 140 Cal App 4th 442, 449 (2006).

The Court finds that this public policy in uncovering, preventing and punishing insurance fraud is significant enough to warrant application of the public policy exception to California's privilege regarding tax returns. While Ms. Geraci states that no fraud charges were ever filed by the Department of Insurance, Progressive still has an interest in conducting its own investigation for fraud. Along with the public policy of favoring discovery, the Legislature's declared policy regarding insurance fraud warrants application of the third exception to the tax return privilege.

In sum, the Court finds that the Ms. Geraci's tax returns and accompanying W2 forms are appropriately subject to discovery. These tax returns and documents, however, may only be reviewed by Progressive's attorneys and experts, subject to a protective order.

### B. Social Security and Disability Checks.

Social security checks and state disability checks are also privileged. *See Jonon v. Superior Court*, 93 Cal.App.3d 683, 689-90 (1979) (Welfare and Institutions Code creates privilege in the

checks by prohibiting the "disclosure of any information which identifies by name or address any applicant for or receipt of (any form of public social services) to any committee or legislative body."). The privilege in these checks may also be waived. *See Los Angeles Gay and Lesbian Center v. Superior Court*, 194 Cal.App.4th 288, 309 (2011) (when a party puts in issue a matter that is normally privileged, the privilege may be waived). These checks affect the issue of income and financial condition and any income from this source will be included in Ms. Geraci's tax returns, which the Court has already found to be discoverable.

        C.      Other Financial Information.

With regard to the other financial information sought by Progressive, in *Valley Bank of Nevada v. Superior Court*, 15 Cal.3d 652, the court found "the general rule appears to be that there exists no common law privilege with respect to bank customer information." *Valley Bank*, 15 Cal.3d at 656. Rather, "one's confidential financial affairs as well as [] the details of one's personal life" is protected by the constitutional right to privacy. *Id*. The "right of privacy is not absolute; it may be abridged to accommodate a compelling public interest." *Moskowitz v. Superior Court*, 137 Cal.App.3d 313, 316 (1982) (citations omitted). One such interest is uncovering the truth in legal proceedings by allowing broad discovery. *Id.* When the right of privacy and the public interest conflict, the court must balance the interests for a fair resolution of the lawsuit. *Id.* A constitutional interest in privacy should be recognized in this balancing process. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34-36 (1984).

        D.      Protective Order.

In balancing the parties' interests the Court believes there is good cause for the issuance of a Protective Order.[3] The Protective Order submitted by the parties assigns to the following materials a confidential designation:

> . . .documents; correspondence; memoranda; bulletins; specifications; telegrams; letters; faxes, e-mails, text messages, notes/memoranda of verbal communications; statements (bank, financial, etc.); cancelled checks; contracts; invoices; drafts; books of account; worksheets; notes of conversations; desk diaries; appointment books; expense accounts;

---

[3] This is a remedy that is available to "any person" who is able to establish good cause for issuance of the protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . .." Rule 26(c).

>recordings; compilations; loan agreements; credit reports; loan applications, account activity logs/reports (whether manually or electronically stored) payment histories (whether manually or electronically stored); correspondence with repossession companies; from which information can be obtained and translated into reasonably usable form through detection devices; notes; reports; instructions; and audio recordings.

[Doc. No. 18-1 at 2.]

In addition to the tax returns, Progressive's requests for production and interrogatories encompass confidential material such as creditor account number information, bank records, and loan agreements. While these items are not privileged, Ms. Geraci has an expectation and right of privacy in them. *See GT, Inc. v. Superior Court*, 151 Cal.App.3d 748, 753 (1984) (a party who seeks punitive damages is entitled to a protective order because the party waives the right to privacy in financial worth only to the extent necessary for fair resolution of the case). A Protective Order suffices to maintain the confidential nature of these documents during the discovery process so as not to violate Ms. Geraci's right to privacy. However, the parties must amend their proposed Protective Order to comply with the findings of this Order.

### 4. Overbroad, Burdensome and Harassing

The provision of Ms. Geraci's tax returns between January 1, 2008 and January 1, 2011 obviate the need for copies of checks from employers, social security and state disability for this period. However, since Ms. Geraci has not filed her 2012 return, all copies of checks from employers, social security and state disability between January 1, 2011 and the present should be provided to Progressive. The provision of bank and credit card statements, and any copies of loan agreements, from January 1, 2008 until the present make provision of endorsed checks and check book ledgers duplicative and burdensome. Thus, the checks and ledgers need not be provided.

Ms. Geraci's financial condition before, during and after the claim is relevant to the misrepresentation clause of the insurance contract and her damages claim. Thus, the Court finds Progressive's request for provision of information from January 1, 2008 to the present appropriate and not overbroad.

### 5. Expert Opinion

Progressive's interrogatories 8, 9, 10 and 11 require Ms. Geraci to describe the acts she

believes entitle her to punitive damages, the dates upon which they occurred, and the documents supporting her claim for punitive damages. Ms. Geraci argues that these are premature and that they call for expert opinion and conclusion. She does not argue that they are irrelevant or otherwise objectionable. She says that discovery has recently opened, she has not deposed any witnesses and has not finished written discovery, and thus is not aware of all the facts setting forth her claim for punitive damages.

In the complaint, Ms. Geraci alleges that Progressive's business practices were despicable, carried on with a willful disregard of her rights and were despicable so as to constitute malice, oppression or fraud under California law. Compl. ¶ 19. Ms. Geraci is under an obligation to respond to Progressive's interrogatories and describe the acts upon which she bases her claim. In this case discovery opened on May 11, 2011. Ms. Geraci should answer with all facts available to her at this time, even if she has to say that she either has no responsive information at this time, or that the response will only be available through expert witness testimony. She may supplement her responses at a later date as discovery continues.

## **CONCLUSION**

Based on the above discussion the Court **HEREBY ORDERS**:

1. Ms. Geraci's tax returns and documents attached thereto (such as W2s) filed between January 1, 2008 to January 1, 2011 are discoverable.
2. Any employer paychecks, social security checks and/or state disability checks between January 1, 2008 and January 1, 2011 are not subject to discovery.
3. Any employer paychecks, social security checks and/or state disability checks between January 1, 2011 to the present are discoverable.
4. Ms. Geraci's endorsed checks and check book ledgers are not subject to discovery.
5. All personal financial information shall be discoverable subject to the provisions of a Protective Order.
6. Ms. Geraci shall respond to Interrogatories 8, 9, 10 and 11 by **September 30, 2011.**
7. The parties' current joint motion for a Protective Order is **DENIED WITHOUT PREJUDICE.**

8. The parties shall resubmit their joint Protective Order by **September 23, 2011**, incorporating the findings of this Order and ensuring that provision is made for destruction of any privileged information when the lawsuit is concluded, including any appeals, and that production of tax returns and related information shall only be disclosed to Progressive's attorneys and experts.

**IT IS SO ORDERED**.

DATED: September 16, 2011

Hon. Nita L. Stormes
U.S. Magistrate Judge
United States District Court