# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS ANTONIO GARCIA and CHRISTINA ELIZABETH PALMER GERACI,<br><br>    Plaintiffs,<br>vs.<br><br>PROGRESSIVE CHOICE INSURANCE COMPANY,<br><br>    Defendant. | CASE NO. 11-CV-466-BEN (NLS)<br><br>**ORDER DETERMINING THE PARTIES' JOINT MOTION FOR DETERMINATION OF A DISCOVERY DISPUTE AND GRANTING PLAINTIFF'S REQUEST FOR PRODUCTION**<br><br>(Dkt. No. 30.) |

Plaintiff Christina Elizabeth Palmer Geraci ("Plaintiff") commenced this breach of contract action against Defendant Progressive Choice Insurance Company ("Defendant" or "Progressive") in the Superior Court of California, County of San Diego; it was removed to federal court by Defendant on the basis of diversity jurisdiction.[1] (Dkt. No. 1.) Currently pending before the Court is the parties' joint motion for a determination of a discovery dispute. (Dkt. No. 30.)

## I.   FACTUAL BACKGROUND

This case arises out of the denial of an insurance claim. Plaintiff alleges that her 2006 Jeep Grand Cherokee, insured by Defendant, was stolen in 2008 and found completely burned hundreds

---

[1] Plaintiff's husband, Jesus Garcia, was originally a Plaintiff in this action. (Dkt. No. 1.) The Court granted the parties' joint motion to dismiss Mr. Garcia, without prejudice. (Dkt. No. 8.)

of miles away from its original location. (Dkt. No. 1-1 ¶ 6.) The complaint alleges that Progressive subsequently denied Plaintiff's claim for coverage in violation of the insurance contract. *Id.* ¶¶ 10-19.

The parties are in general agreement as to the circumstances that led to the instant discovery dispute. Early in the discovery process, Defendant disclosed Teresa Starinieri, an outside attorney hired by Progressive during the investigation of Plaintiff's claim, as a witness. (Dkt. No. 30 at 19 ¶ 4 and 33 ¶ 4[2].) At the time of disclosure, Defendant indicated that Ms. Starinieri would testify about "her legal work and advice in connection with the claim." *Id.* As part of Defendant's response to Plaintiff's discovery demands, it disclosed the claims file for the underlying insurance claim and the electronic claim activity notes. *Id.* at 19 ¶ 5 and 33 ¶ 3. This claims file included communications between Ms. Starinieri and Elizabeth McAndrew, a claims adjuster employed by Defendant. *Id.* at 33 ¶ 3. These items were produced "subject to objection on grounds of attorney-client privilege." *Id.*

It came to light at Ms. McAndrew's deposition that there may be some e-mail communications between her and Ms. Starinieri that were not in the claims file. *Id.* at 21 ¶ 11 and 34 ¶ 5. At the request of Plaintiff's counsel, Defendant conducted a search for the e-mails, which were on an e-mail system no longer in use. *Id.* at 34 ¶ 6. According to Defendant, some e-mails were recovered directly from Ms. Starinieri, and were disclosed to Plaintiff's counsel on February 1, 2012, and on March 20, 2012. *Id.* at 34-35 ¶ 7.

On May 25, 2012, counsel for Defendant received a set of documents that had been recovered from Progressive's old e-mail system. *Id.* at 35 ¶ 8. After reviewing the materials, Defendant disclosed some of the documents to Plaintiff on June 6, 2012, but withheld those that contained privileged communications between Progressive employees and Ms. Starinieri. *Id.* ¶ 9. In doing so, Defendant advised that it was withdrawing its previously asserted advice of counsel defense,[3] and was now claiming attorney-client and attorney work product privileges with respect to the withheld communications, identified as Item Nos. 1-109 on the amended privilege log. *Id.* at 21 ¶ 12, 35 ¶¶ 9-10, 43-58. The amended privilege log submitted by Defendant also lists communications that were

---

[2] Citations to page numbers refer to those assigned by the ECF system.

[3] As pointed out by Defendant, "advice of counsel" is not an affirmative defense, but can be argued in insurance bad faith actions to demonstrate that the insurer did not act unreasonably. *State Farm Mutual Auto Ins. Co. v. Superior Court*, 228 Cal.App.3d 721 (1991).

1  previously disclosed. *Id.* at 59-76. On June 18, 2012, Defendants filed a summary judgment motion in this action, asserting that coverage under the insurance contract is barred because of misrepresentations made by Plaintiff and her husband during the investigation of the claim. (Dkt. No. 26.)

Pursuant to the scheduling order issued in this action, fact discovery closed on January 30, 2012. (Dkt. No. 23 ¶ 1.) However, it is evident that the parties continued to engage in discovery well past this deadline. *See, e.g.,* Dkt. No. 30 at 19-20 ¶ 7. Although this joint motion is untimely, this Court chooses to exercise its discretion to address the merits of the motion.

## II.     THE POSITIONS OF THE PARTIES

Plaintiff asserts that Defendant has waived attorney-client privilege with respect to the newly discovered e-mails and with respect to the communications already produced. Due to the fact that Defendant maintained the "advice of counsel" defense throughout the discovery process, Plaintiff argues Defendant should be bound to this defense and requests that this Court review the e-mails listed in the amended privilege log to "decide upon the propriety of Progressive's attempt to suddenly and drastically alter the course of this litigation." (Dkt. No. 30 at 5.) She argues that her litigation and trial strategy was based upon Defendant's assertion that it relied on the advice of counsel; she claims she did not ask questions to witnesses because of Ms. Starinieri's planned deposition, she did not know she did not have the entire case file, and she did not hire a claims handling expert. *Id.* at 11. Plaintiff requests that the e-mail communications be disclosed and that Ms. Starinieri be required to testify at a deposition without claiming privilege.[4] *Id.* at 17. Alternatively, Plaintiff seeks to re-depose witnesses, at Defendant's cost. *Id.* at 15.

Defendant argues that the newly discovered e-mails are confidential attorney-client communications, and that they have never been disclosed to outside parties. *Id.* at 6. As a result, Defendant argues that there has been no waiver of privilege with respect to Item Nos. 1-109 on the amended privilege log. *Id.*

///

---

[4] In his declaration, Plaintiff's counsel states that he has been attempting to depose Ms. Starinieri since January 20, 2012. (Dkt. No. 30 at 20.) Defendant does not contradict this assertion. However, Ms. Starinieri's failure to appear at a deposition is not an issue presently before this Court.

### III.     GOVERNING LAW

In an action in federal court that is based on diversity of citizenship, state law governs questions of attorney-client privilege. Fed. R. Evid. 501; *Star Editorial, Inc. v. United States District Court for the Central District of California (Dangerfield)*, 7 F.3d 856, 859 (9th Cir. 1993) (California law governs questions of privilege in a diversity action where state law provides the rule of decision). In California, privileges such as the one between attorney and client are created and governed by statute. *HLC Properties, Ltd. v. Superior Court,* 35 Cal.4th 54, 59 (2005).

The attorney-client privilege under California law is outlined in § 954 of the California Evidence Code. It provides that "a client...has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer..." Cal. Evid. Code § 954. The purpose behind such a privilege is to protect the confidential relationship between attorneys and their clients, in order to "promote full and open discussion of the facts and tactics surrounding individual legal matters." *Mitchell v. Superior Court (Shell Oil Co.)*, 37 Cal.3d 591, 599 (1985). "[T]he public policy fostered by the privilege seeks to insure 'the right of every person to freely and fully confer and confide in one having knowledge of the law, and skilled in its practice, in order that the former may have adequate advice and a proper defense.'" *Id.*; citing *Baird v. Koerner*, 279 F.2d 623, 629 (9th Cir. 1960). Courts of this state have confirmed that preservation of the confidentiality of the attorney-client relationship outweighs the possibility of an unjust decision. *Mitchell*, 37 Cal.3d at 600; *Costco Wholesale Corp. v. Superior Court (Randall)*, 47 Cal.4th 725, 732 (2009); *Kandel v. Brother Intern. Corp.*, 683 F.Supp. 2d 1076, 1081 n. 4 (C.D.Cal. 2010). Courts generally may not require disclosure of information claimed to be privileged in order to rule on the claim of privilege. Cal. Evid. Code § 915.

The party claiming the privilege has the initial burden of "establishing the preliminary facts necessary to support its exercise, i.e., a communication made in the course of the attorney-client relationship." *Costco*, 47 Cal.4th at 733. Once that is established, "the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply." *Id.*

The attorney-client privilege may be waived expressly or impliedly. *Transamerica Title Ins. Co. v. Superior Court (Bank of the West)*, 188 Cal.App.3d 1047, 1052 (1987). Express waiver is governed by Cal. Evid. Code § 912, which states that a privilege is waived "if any holder of the privilege, without coercion, has disclosed a significant part of the communication or has consented to disclosure made by anyone." What constitutes "a significant part of the communication" is subject to judicial interpretation; however, the scope of the waiver should be "determined primarily by reference to the purpose of the privilege[.]" *Jones v. Superior Court*, 119 Cal.App.3d 534, 547 (1981); *see also Transamerica*, 188 Cal.App.3d at 1052. "Where the disclosure sought is so related to the disclosure already made that the [holder] could not reasonably retain a privacy interest in preventing it, then the purpose of the privilege no longer exists, and it may be said that the privilege has been waived." *Jones*, 119 Cal.App.3d at 547-48.

Attorney-client privilege may also be impliedly waived if a party to litigation places into issue a matter that is traditionally privileged. *Transamerica*, 188 Cal.App.3d at 1052. Such an implied waiver can be found when a party states that it relied upon the advice of counsel, therefore putting attorney-client communication directly at issue. *See id.* at 1053. Whether express or implied, the scope of a waiver must be narrowly construed and "fit within the confines of the waiver." *Id.* at 1052; *see also San Diego Trolley, Inc., v. Superior Court*, 87 Cal.App.4th 1083, 1092 (2001).

**IV. APPLICATION**

The facts in the instant motion present a unique situation. There does not appear to be a contention that the e-mails in question are a communication between a client and lawyer, and would normally be subject to privilege. It is also undisputed that when Defendant asserted an "advice of counsel" defense, it placed the communications with Ms. Starinieri in issue, and impliedly waived privilege. Indeed, Defendant willingly disclosed the claims file, and contained within that file were approximately forty-five privileged communications. (Dkt. No. 30 at 33 ¶ 3.) The dates of these communications range from December 2, 2008, to August 7, 2009. *Id.* at 59-67. After it became apparent that there were e-mails on another system involving Ms. Starinieri, Defendant conducted a search for the additional e-mails. There were forty-two e-mails recovered from Ms. Starinieri that were disclosed to Plaintiff in February and in March of 2012. *Id.* at 34-35 ¶ 7. The dates of these

communications range from December 15, 2008, to May 26, 2009. *Id.* at 70-76. Finally, in May 2012, Defendant recovered approximately 109 e-mails from its previous e-mail platform. The dates of these communications range from November 24, 2008, to July 13, 2009. *Id.* at 43-58. It is this last group of e-mails that triggered the withdrawal of the advice of counsel defense and the claim of attorney-client privilege.[5]

Defendant has already disclosed a number of communications between it and Ms. Starinieri, the majority of which involve Elizabeth McAndrew, a claims adjuster. In the joint motion presented to the Court, Defendant does not appear to argue that these already disclosed communications should now be shielded from any use pursuant to attorney-client privilege. *See* Dkt. No. 30 at 24 ("The only issues to be resolved on this discovery motion are (1) whether the newly discovered e-mails are privileged and (2) whether Progressive has waived the attorney-client privilege with respect to these communications.") Although Defendant states that disclosure was made "subject to objection on grounds of attorney-client privilege," *see id.* at 33 ¶ 3, there has been no authority presented to suggest that, in voluntarily providing the documents without any type of coercion, Defendant did not expressly waive privilege with respect to the disclosed information.[6] *See* Cal. Evid. Code § 912. Therefore, waiver of privilege with respect to Item Nos. 110-222 on the amended privilege log will not be discussed.

The question at the heart of this discovery dispute is whether Defendant has waived its attorney-client privilege with respect to the newly discovered e-mails listed as Item Nos. 1-109 on its amended privilege log. Under Cal. Evid. Code § 912, if Defendant has disclosed "a significant part of the communication," then it has expressly waived privilege. If not, there has been no express waiver and the communications are protected.

The resolution of this issue turns on the definition and interpretation of the phrase "a significant part of the communication." Defendant posits that this language treats each

---

[5] According to the amended privilege log, items 156-179 have also already been disclosed to Plaintiff, but are not specifically accounted for in Defendant's papers.

[6] Defendant may have disclosed this information because it had impliedly waived attorney-client privilege by putting Ms. Starinieri's advice in issue. However, Cal. Evid. Code § 912 does not contain any language to indicate underlying motivation is a factor when determining express waiver.

1 communication separately; that is, each e-mail is one communication. (Dkt. No. 30 at 28-29.) Under
2 this theory, disclosure of one e-mail communication does not waive privilege with respect to another
3 e-mail communication.

4     Defendant argues that there is no subject matter waiver under California law, and relies on two
5 California Practice Guides for this proposition. (Dkt. No. 30 at 29.) These Guides mainly rely on
6 three California cases to support the conclusion that "[d]isclosure of a significant part of a privileged
7 communication waives the privilege only with respect to that communication." Vapnek, et al., *Cal.*
8 *Practice Guide: Professional Responsibility* (Rutter Group 2011) ¶ 7:354; Wegner, et al., *Cal.*
9 *Practice Guide: Civil Trials and Evidence* (Rutter Group 2011) ¶ 8:1907 (emphasis omitted from
10 both).

11     In *Owens v. Palos Verdes Monaco*, Plaintiff took the position that the disclosure of attorney
12 drafts, notes, and communications, relating to a transaction waived privilege as to all other
13 "communications and work product having anything to do with the subject matter of the lawsuit." 142
14 Cal.App.3d 855, 870 (1983); *overruled on other grounds by Applied Equip. Corp. v. Litton Saudi*
15 *Arabia Ltd.*, 7 Cal.4th 503 (1994). The trial court held, and the Court of Appeal agreed, that "a waiver
16 under Evidence Code section 912 relates to the particular communication which has been revealed and
17 not to all communications concerning the subject matter of the lawsuit." *Id.* In finding that the
18 documents disclosed did not constitute a significant part of the communications Plaintiff sought to
19 discover, the Court concluded that waiver had not occurred. *Id.* at 871.

20     In *San Diego Trolley,* Plaintiff sought to recover for injuries sustained when she became
21 trapped underneath a trolley. 87 Cal.App.4th at 1088. When the operator of the trolley was deposed,
22 she testified that she was being treated by a psychiatrist for anxiety, that she was taking prescription
23 medication, and that she had informed her supervisors about her treatment and medication. *Id.* After
24 the accident, the operator was unable to return to work and filed a stress-related worker's
25 compensation claim. *Id.* at 1088-89.

26     In response to this information, Plaintiff served document requests to obtain the operator's
27 personnel file, her pharmacy records, her health maintenance organization records, and her worker's
28 compensation records. *Id.* at 1089. After the operator objected, Plaintiff moved to compel responses,

arguing that the physician-patient and therapist-patient privileges[7] had been waived when the operator testified about her condition and when she filed for worker's compensation. *Id.* The Court of Appeal noted that "any waiver must be narrowly construed" and limited to those matters where it can be said that the holder of the privilege no longer retains a privacy interest. *Id.* at 1092. In finding that waiver had not occurred, the Court made the distinction between disclosing the existence and the purpose of a psychotherapist and patient relationship, and disclosing a significant part of the actual communications between a therapist and a patient. *Id.* at 1092-93. The Court found that the operator's disclosures fit into the former category, and not the latter.[8] *Id.* at 1094.

The third case discussed in the Rutter Guide, *Manuela v. Superior Court*, involved a divorce action where the wife argued that the husband's waiver of the physician-patient privilege with respect to two of his doctors, Dr. Gross and Dr. Cohen, constituted waiver of the privilege with respect to a third doctor, Dr. Morrison. 177 Cal.App.4th 1139, 1147 (2009). Waiver was not in dispute with respect to Dr. Gross, and waiver was found with respect to Dr. Cohen because the wife was present during the examination.[9] *Id.* at 1147. Noting that "the scope of the waiver of a privilege is generally construed narrowly," the Court found that the husband's waivers of privilege as to Dr. Gross and Dr. Cohen did not extend to Dr. Morrison because he treated with Dr. Morrison many years earlier, when he was a teenager. *Id.* at 1148.

The clear instruction that comes from these cases is that any waiver of the attorney-client privilege is to be narrowly construed. However, these cases are not specifically on point for the argument Defendant seeks to support. Defendant posits that a client retains attorney-client privilege over a group of e-mails, even though other contemporaneous e-mails between the same people on the same topic have been disclosed. This is not analogous to *Manuela*, where a party sought to extend waiver of two contemporaneous treating physicians to a physician seen many years earlier. It is also not comparable to *San Diego Trolley*, where a party argued waiver of therapist-patient privilege based

---

[7] Waiver of these privileges is also governed by Cal. Evid. Code § 912.

[8] The Court in *San Diego Trolley* found a limited exception to the therapist-patient privilege based on a disclosure necessary to prevent harm, a issue not relevant here. 87 Cal. App. 4th at 1096-97.

[9] The Court found that marital privilege did not apply. 177 Cal. App. 4th at 1147.

upon testimony regarding the existence of treatment. The facts in *Owens* are the most similar of the three, but can be distinguished because Plaintiff in the instant case is not seeking all communications and attorney work product having anything to do with the lawsuit. She is only seeking the newly discovered e-mails, which are connected to the e-mails already disclosed.

A case that is more instructive on this topic is *Jones v. Superior Court*, where a mother testified at her deposition about her medical history, recounting conversations with her doctor, her pharmacist, and others, regarding her pregnancy and leading up until the time she gave birth. 119 Cal.App.3d at 541. These discussions included the mother's ingestion of DES, the drug at the center of the lawsuit. *Id.* However, she would not disclose the names of the physicians, pharmacists, and hospitals she had treated with during her pregnancy, and would not respond to questions about her medical history after she gave birth. *Id.*

Although the Court of Appeal found that the mother had not waived her privilege as to all privileged communications during her lifetime, by testifying about her use of DES and the surrounding circumstances the mother had disclosed a significant part of her communications on that subject and on the related subject of her pregnancy. *Id.* at 546-47. Thus, statutory privilege had been waived. *Id.* at 546. The Court went on to note:

> [S]ection 912 prescribes waiver with respect to a communication where there has been disclosure of a significant part of the communication. We are prepared to accept that the term communication deserves, in this context, a liberal construction. A patient, for example, who has disclosed her conversation with a physician on Monday ought not be permitted to claim the privilege with respect to a conversation with the same physician and relating to the same subject matter on Tuesday. Arguably, the same is true where the patient consults more than one physician concerning the same subject matter, and discloses her communication with one of them. But it would distort the statutory language beyond its apparent meaning to say that the waiver extends to all communications with any physician at any time.

*Id.* at 547.

The example presented by the Court of Appeal is analogous to the facts present here. The amended privilege log submitted by Defendant lists items that have not been disclosed and items that have been disclosed. With few exceptions, all items are communications between claims adjuster Elizabeth McAndrew and Ms. Starinieri about the Geraci/Garcia claim. They all stem from the same time period, beginning at the end of 2008 and continuing to the middle of 2009. More than half of the items on the list of withheld e-mails have the same date, time, and description as e-mails that appear

on the list of disclosed items. *See, e.g.* Item Nos. 1 and 216, 5 and 180, 15 and 168, 33 and 194, 60 and 209. If they are the same e-mails, it appears that many of the withheld documents have already been disclosed. Even if the duplicate items are not, in fact, the same communications, it cannot be fairly said that Defendant retains a privacy interest in the withheld materials when they are contemporaneous with the disclosed items, involve the same claim, and are between the same individuals. *See Jones*, 119 Cal.App.3d at 547-48; *see also Cason v. Federated Life Insurance Co.,* 2011 WL 1935870 at *7-8 (N.D.Cal. May 20, 2011) (finding clergy-penitent privilege waived with respect to a 2009 missionary application when a missionary application from 2010 was disclosed); *Sony Computer Entertainment America, Inc. v. Great American Ins. Co.,* 229 F.R.D. 632, 635 (N.D.Cal. 2005) (waiver of attorney-client privilege covered disclosed fax and e-mail, as well as any follow-up discussions).

As noted in *Jones*, waiver is tailored to the purpose of the privilege. 119 Cal.App.3d at 547; *see also Transamerica*, 188 Cal.App.3d at 1052. The attorney-client privilege is designed to foster open communication between client and attorney, in this case, between Ms. Starinieri and Defendant. However, Defendant voluntarily disclosed a large amount of communications it had with Ms. Starinieri regarding the Geraci claim, and the purpose of that privilege was lost. In finding that Defendant expressly waived its attorney-client privilege with respect to the newly discovered e-mails, this Court is not finding that Defendant acted in bad faith and is not imposing a sanction. The Court is also not compelling Defendant to assert any particular defense. The sole conclusion reached by this Court is that Defendant expressly waived attorney-client privilege with respect to communications between it and Ms. Starinieri concerning Plaintiff's claim.

///
///
///
///
///
///
///

**V.   CONCLUSION**

**ACCORDINGLY**, it is hereby

**ORDERED**, that Defendant is to produce the documents identified as Item Nos. 1-109 on its amended privilege log to Plaintiff's counsel within seven days of the date of this Order.[10]

**IT IS SO ORDERED.**

DATED: July 30, 2012

Hon. Nita L. Stormes
U.S. Magistrate Judge
United States District Court

---

[10] The issue of deposing Ms. Starinieri has not been properly briefed before this Court and it is unclear whether this conflict is ripe for adjudication. In light of the Court's ruling that there has been express waiver of the attorney-client privilege, the undersigned directs the parties to meet and confer to try to resolve the issue.